UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE FINNERTY,

    Plaintiff,

v.

WIRELESS RETAIL, INC., et al.,

    Defendant.
                                    /

Case No. 2:04-cv-40247

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
<u>AS AGAINST DEFENDANT WIRELESS RETAIL, INC.</u> (document no. 135)**

In this action, plaintiff Renee Finnerty alleges that her former employer, Wireless Retail, Inc.("Wireless"), terminated her employment in violation of the federal Family and Medical Leave Act of 1993, *codified at* 29 U.S.C. §§ 2601 *et seq*, and of Michigan's Elliot-Larsen Civil Rights Act, *codified at* Mich. Comp. L. §§ 37.2101 *et seq*. Finnerty filed this suit in the Circuit Court for Wayne County, Michigan, and Wireless removed it to this court, where it was assigned to District Judge Paul V. Gadola. Document no. 1. Shortly after the suit was filed, Wireless sold a substantial portion of its business to Radioshack Corporation. Approximately one year after the sale, Wireless Retail's counsel withdrew from its representation, stating that Wireless had ceased to operate as a going concern and was abandoning its defense of the case. Document nos. 49, 53. With Judge Gadola's leave, Finnerty amended her complaint to name Radioshack and SC Kiosks, Inc. as additional defendants, on a theory of successor liability. Document nos. 50, 57, 58. Finnerty then moved for default judgment as against Wireless. Document no. 67. Judge Gadola denied this motion without prejudice, on the basis that it would unfairly disadvantage Radioshack and SC Kiosks in their own defenses. Document no. 77.

On September 4th, 2008, the case was reassigned to the undersigned. Document no. 125. Radioshack and SC Kiosks had moved for summary judgment on January 18th of that year, document no. 114, and on March 30th, 2009, this Court granted the motion, document no. 133, concluding that Finnerty's claims against these defendants were barred by the statute of limitations and the equitable doctrine of laches, and that Radioshack and SC Kiosks were in any event not subject to successor liability for Wireless's wrongdoing, as alleged by Finnerty.

Wireless engaged in no further defense of the case throughout this period; its most recent filing on the court's docket remains the February 10th, 2006, motion for withdrawal by its then-attorneys, and the Clerk of Court entered a default against Wireless on May 30th, 2006. Document no. 68. Therefore, with the risk of prejudice to the successor defendants removed by the grant of summary judgment in their favor, the Court invited Finnerty to renew her motion for default judgment as against Wireless. Document no. 134. She has now done so, document no. 135, and the Court will grant the motion.

According to Federal Rule of Civil Procedure 55(b)(2), in cases such as this one where the plaintiff's claim is not for a sum certain and cannot be made certain by simple computation, default judgment can be entered only on application to the Court. The same rule authorizes the Court to "determine the amount of damages." The Court will do so here.

Finnerty requests damages in the amount of $2,686,568,35. This represents (1) an alleged $1,255,216 in compensatory economic damages plus $6,703.48 in interest, doubled to $2,523,838.96 accordance with the FMLA's liquidated damage provisions, plus (2) $100,000 in compensatory non-economic damages under the ELCRA, (3) $58,200 in attorney fees under the FMLA, and (4) costs of $4,529.39. The interest, fees, and costs

figures are current only as of July 25th, 2006, the date of plaintiff's original motion for default. The Court will examine each item in turn.

I. <u>Economic and Liquidated Damages</u>

    A. <u>Economic Damages</u>

Finnerty's claim of economic damages is based entirely on the report of Nitin V. Paranjpe, who holds a Ph.D. in Economics from Wayne State University. *See* document no. 67-21. Paranjpe projected what Finnerty's earnings would have been for each of the remaining years of her working life if she had not been fired, and then compared this amount with his separate projections for the same time period now that Finnerty has been terminated by Wireless. His methodology follows.

Finnerty's actual earnings in 2002, the year she was fired, were $47,857. Document no. 67-7. She did not work after October 26th of that year, however. Paranjpe assumed that Finnerty would have returned to work as of December 1 had she not been fired, and thus calculated annualized earnings of $52,860 for 2002. For reasons that are not clearly explained in his report, Paranjpe then assumed that Finnerty's earnings for 2003 would have fallen to $39,093 had she not been fired. For each year thereafter, he assumed that Finnerty's salary would increase 4% each year, except for the period of 2006 to 2007. For that period, for reasons that again are unclear, Paranjpe projected Finnerty's salary to grow from $49,226 to $61,304. Paranjpe then noted that in actuality, after being fired Finnerty returned to school and was not expected to graduate till the end of 2006. At that time, Paranjpe projected, Finnerty would earn $36,897, which he also assumed would increase at 4% yearly for essentially the rest of Finnerty's working life. For each year between 2002 and 2048, when Finnerty will turn 67 years old, Paranjpe calculated the difference between her projected income had she not been fired and her projected post-firing income, and then

3

adjusted this figure for inflation and reduced it to present value. Totaling these yearly figures yielded a total of $1,255,216 in economic damages.

The Court finds Paranjpe's analysis to be unpersuasive in one important respect. Specifically, the Court finds that any reduction in Finnerty's actual or projected earning capacity beyond 2006 is too remote from her firing by Wireless to reasonably be regarded as caused by it. Since Finnerty did not have a college degree at the time she was fired, it was probably foreseeable that she would return to school and not have any earnings for four years after her termination. After this point, however, there is no reason to assume, as Paranjpe did, that Finnerty's income would be any lower than it would have been had she remained with Wireless. Indeed, Paranjpe's projections are that, had Finnerty not been fired by Wireless, she would have been earning over $300,000 per year by the time she reached her early 40s, whereas after receiving her college diploma her income would barely be over $100,000 per year at the same age. This proof is entirely speculative and incapable of supporting an award of damages.

The Court will thus adopt Paranjpe's projections of Finnerty's damages, but truncate them at the year 2006. According to Paranjpe's report, Finnerty's damages were $5,003 for 2002, $39,093 for 2003, $38,157 for 2004, $42,283 for 2005, and $46,882 for 2006. This totals to $171,418, which the Court will adopt as the amount of economic damages that Finnerty has fairly proven.

B. Interest

In her initial motion for default judgment, Finnerty sought interest damages of $6,703.48. Without elaborating her calculations, Finnerty claimed that this sum represents a 5% prejudgment interest rate. The Court is unaware of how this figure was calculated; it seems possible that it represents a single 5% portion of Finnerty's total accrued damages

4

as of the date of her first motion for default judgment. In any event, whether or not this figure was accurate in 2006, a recalculation of Finnerty's interest is certainly required to account for this passage of time since the motion was filed.

The Family and Medical Leave Act, as codified at 29 U.S.C. sec. 2617(a)(1)(A)(I)(ii) provides that a plaintiff who wins a damages award under the FMLA is entitled to prejudgment interest on the award "at the prevailing rate." The term "prevailing rate" is not defined by the statute, and the determination of this rate in any given case is committed to the discretion of the Court. *United States v. City of Warren*, 138 F. 3d 1083, 1096 (6th Cir. 1998). In this case, however, the Court is also awarding Finnerty judgment on her claim under the ELCRA, to which Michigan's mandatory statutory prejudgment interest rate applies. According to Mich. Comp. L. § 600.6013(6),

> interest on a money judgment recovered in a civil action shall be calculated at 6-month intervals from the date of filing the complaint at a rate of interest which is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually.

The Court finds this rate to be an appropriate yardstick for FMLA interest as well.

Sec. 600.6013(6) indicates that prejudgment interest on a claim under Michigan law accrues only from the date of the lawsuit's filing. By contract, Sixth Circuit law is that with respect to federal employment claims, "[p]rejudgment interest ordinarily should apply to each year an employee lost the use of her wages," *EEOC v. Ky. State Police Dep't*, 80 F. 3d 1086, 1099 (1996). Accordingly, having found the Michigan rate to be an appropriate measurement of the "prevailing rate" for Finnerty's FMLA claim, the Court will apply the statutory rate to both the pre- and post-filing periods. With respect to the period before she filed this suit, this award of interest to Finnerty will be based on the FMLA only. With respect to the post-filing period, in order to avoid an unwarranted double recovery, the

5

Court will award her interest on the same terms, based on both the FMLA and the ELCRA.

Allocating Finnerty's yearly losses evenly throughout the years when they occurred, adding one percent to the rates certified by Michigan's Treasurer, *see* Interest Rates for Money Judgments: July 1, 2009, *available at* http://www.michigan.gov/treasury/0,1607,7-121-44402_44404-107013--,00.html, and compounding yearly to date, the calculation mandated by § 6013(6) yields a total interest award of $37,979.48.

### C. Liquidated Damages Under the FMLA

29 U.S.C. sec. 2617(a)(1)(A)(I)(iii) requires a doubling of an FMLA plaintiff's damages and interest award, unless the defendant is found to have acted in good faith and with reasonable grounds for believing that it was not violating the FMLA. The Court sees no grounds for finding Wireless to have acted in good faith here. Accordingly, it will apply this doubling provision. The total of Finnerty's $171,418 economic damages and $37,979.48 interest damages is $209,397.48. The Court will award this amount as additional liquidated damages.

### II. Non-Economic Compensatory Damages

Finnerty also seeks damages for emotional distress, in the amount of $100,000, pursuant to the ELCRA. "There is no question that emotional distress damages are recoverable" under that provision. *Dep't of Civil Rights ex rel. Johnson v. Silver Dollar Café*, 198 Mich. App. 547, 549 (1993). Finnerty has filed an declaration stating that, due to the loss of income caused by her firing, her car was repossessed, she is unable to go to the doctor or the dentist, and she is forced to live in a dangerous apartment complex which features mold under the tiles and a collapsed roof, and from which she can regularly hear gunshots. These difficulties have prevented her from engaging in social activities,

hosting friends and family members, and providing dance classes, swimming lessons, or even a birthday party for her daughter. Decl. of Renee Finnerty, document no. 70-3, para. 17-22. The Court agrees that, in light of Wireless's default, she has made a sufficient showing of emotional distress to justify her requested award of $100,000. In the Court's view, however, Finnerty's liquidated damages award under the FMLA fully compensates her for this harm. Accordingly, any further award under the ELCRA would represent an unwarranted double recovery.

### III.  Attorney Fees and Costs

29 U.S.C. § 2617 further provides that a prevailing FMLA plaintiff is entitled to "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action." Finnerty seeks such costs here. The Court has reviewed Finnerty's counsel's billing schedule, document no 70-4, which documents an expenditure of 232.8 hours at a rate of $250 per hour. The Court finds this hourly rate to be reasonable, and that all the represented services were reasonably necessary to the prosecution of Finnerty's case against Wireless. The Court notes, however, that a large majority of counsel's entries – roughly 76 out of 100 total – have been billed in increments of whole hours or half-hours. *Id.* In the absence of any evidence to the contrary, it thus appears that some of these activities may have been recorded with half-hours as the minimum increment. In the Court's judgment, the use of such a large increment will tend to inflate the fee beyond what is necessarily reasonable, and a minimum increment of at most one-quarter hour is necessary to reasonably capture the actual time expended. Since there is once again no proof to the contrary, the Court will therefore assume that one-half of the billable entries submitted by plaintiff that are rounded to whole or half hours would more appropriately have been billed as taking one-quarter of an hour less than represented. This would result in 38

7

entries that overstated by .25 hours each, for a total of 9.5 extra hours. Subtracted from plaintiff's represented billables, this yields a total of 223.3 hours expended. At counsel's reasonable rate of $250 per hour, the total bill is thus $55,750.

The Court has additionally reviewed Finnerty's statement of $4,529.39 in costs and expert witness fees, and finds it to be accurate and reasonable.

## SUMMARY AND ORDER

Finnerty has shown an entitlement to a default judgment in the following amounts:

| | |
|---|---:|
| Economic Damages (FMLA and ELCRA): | $171,418.00 |
| Prejudgment Interest (FMLA, ELCRA in part): | $37,979.48 |
| Liquidated/Non-Economic Damages (FMLA/ELCRA): | $209,397.48 |
| Attorneys' Fees: | $55,750.00 |
| Costs and expert witness fees: | $4,529.39 |
| TOTAL: | $479,074.35 |

**WHEREFORE**, it is hereby **ORDERED** that plaintiff's motion for default judgment as to defendant Wireless is **GRANTED**. Judgment will be entered in the above amount, and the case will be closed.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 18, 2009

8

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 18, 2009, by electronic and/or ordinary mail.

                                  Alissa Greer
                                  Case Manager